IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| HEATHER N. BARNETT, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 cv 2092 EJM |
| vs. | ) | |
| | ) | ORDER |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff brings this action seeking judicial review of the Commissioner's denial of her application for social security disability income benefits (DIB) and supplemental security income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §416, claiming injury to her non-dominant left wrist. Briefing concluded June 7, 2016. The court has jurisdiction pursuant to 42 USC §405(g). Affirmed.

Plaintiff asserts the Administrative Law Judge (ALJ) (1) failed to properly assess the medical opinion of her examining physician, and (2) failed to have sufficient medical opinion support when formulating the Residual Functional Capacity (RFC.) Plaintiff asserts that the Commissioner's decision is thus not supported by substantial evidence on the record as a whole.

> [R]eview of the agency decision is limited to whether there is substantial evidence on the record as a whole to support the [Commissioner's] decision...Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.

Robinson v. Sullivan, 956 F2d 836, 838 (8th Cir. 1992).

1

Plaintiff's first claim of error is that the ALJ failed to properly assess the medical opinion of her examining physician, Dr. Sangeeta Shah, M.D. The ALJ found that Dr. Shah was not a treating physician, 20 C.F.R. §§ 404.1502, 416.902; see Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004). Thus, Dr. Shah's opinion was not entitled to that level of deference and analysis afforded to a treating physician. The ALJ gave her opinion some but not great weight.

Dr. Shah, a neurologist, saw plaintiff two times in May 2013 on a referral from her treating physician, Richard Naylor, D.O. Two visits during the relevant time do not necessarily qualify Dr. Shah as a treating physician. 20 C.F.R. §§ 404.1502; 416.902; see Randolph, 386 F.3d at 840 (doctor did not qualify as a treating physician because at the time of the evaluation, the doctor had only seen the claimant three times). The ALJ was within his discretion to find that Dr. Shah was an examining consultant at the behest of Dr. Naylor, who was plaintiff's treating physician.

When the ALJ considers an examining, non-treating physician's opinion, he examines factors such as the examining relationship, treatment relationship, length of treatment relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency with the record as a whole, specialization, and other relevant factors. 20 C.F.R. §§ 404.1527(c)(1-6), 416.927(c)(1-6). Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *6.

Plaintiff told Dr. Shah that she had a left hand injury and related surgeries, weakness, hypersensitivity, and ongoing pain. Plaintiff denied elbow or neck pain. Upon examination, Dr. Shah noted some left-hand atrophy, hypersensitivity, and shiny skin. The ALJ accepted Dr. Shah's diagnosis of RSDS/CRPS, finding it was a severe

impairment at step 2 of the disability analysis. In her only other office record, Dr. Shah stated plaintiff's electro diagnostic testing showed her "left upper extremity" was within normal limits.

After Dr. Shah saw plaintiff in May 2013, plaintiff did not receive any treatment from any medical provider, including Drs. Shah and Naylor, during the relevant time. On January 14, 2014, eight months after she last saw plaintiff, Dr. Shah was asked to fill out a form supplied by plaintiff's attorney entitled "Reflex Sympathetic Dystrophy (RSD)/Complex Regional Pain Syndrome, Type 1 (CRPS) Medical Source Statement". Dr. Shah checked that plaintiff had RSDS/CRPS and persistent complaints of pain that were out of proportion to the precipitating injury. Dr. Shah's prognosis was "guarded [to] poor". Dr. Shah checked that plaintiff's symptoms included burning pain, reduced mobility, muscle spasm, atrophy, abnormal temperature sensations, and depression. Dr. Shah opined medication side effects decreased plaintiff's walking capacity. Although Dr. Shah checked that plaintiff could sit for more than two hours, she also checked plaintiff could sit for less than two hours out of an eight hour workday. Dr. Shah circled that plaintiff could stand for two hours at a time, but then stated plaintiff was limited to less than two hours of standing and walking during a workday. Dr. Shah wrote that while plaintiff had no right hand restrictions, she could never lift any amount with her left hand, and was "unable to do any kind of work due to hyperesthesia of the left hand" and severe pain. Dr. Shah opined plaintiff was incapable of doing even low stress work and would be absent from work more than four days a month. Dr. Shah's checked limitations on the form went much further than was justified by her own notes from when she had examined plaintiff eight months previously.

3

The ALJ gave four reasons for not accepting Dr. Shah's opinion. First, Dr. Shah saw plaintiff on only two occasions and gave her opinion many months after she last saw plaintiff. See Randolph, 386 F.3d at 840 (when the doctor filled out the checklist, she had only met with the claimant on three prior occasions); accord White v. Barnhart, 287 F.3d 903, 907 (10th Cir. 2002).

Second, the ALJ highlighted several instances where Dr. Shah's opinion was inconsistent with and exaggerated the moderate deficits noted in her own examination reports. Dr. Shah documented plaintiff had normal reflexes and almost full strength in her left wrist. Dr. Shah stated electro diagnostic testing showed plaintiff's "left upper extremity" was within normal limits. The ALJ also weighed the fact that other objective evidence detracted from Dr. Shah's opinion. In April 2013, Eric Jakubowski, M.D., interpreted plaintiff's three phase bone scan and saw "No scintigraphic evidence of complex regional pain syndrome (formerly reflex sympathetic dystrophy)". An ALJ may discount an opinion such as Dr. Shah's when it is inconsistent with her own notes and with objective medical evidence relating to the claimant's alleged pain levels. See Wright v. Colvin, 789 F.3d 847, 853 (8th Cir. 2015).

Third, the ALJ found Dr. Shah's limitations inconsistent with plaintiff's numerous activities requiring some use of her left hand, including driving and caring for her two year old and six year old children. In support of the ALJ's evaluation, plaintiff testified that she drove to the hearing and did not have any problems doing so. In her application documents, plaintiff complained of wrist pain but also stated she could care for her two young children, shop twice a week, clean house, wash dishes, do laundry, change diapers, sweep, and vacuum. Plaintiff wrote, "I do all the shopping and daily needs of

4

the house and family." Plaintiff also took care of a dog and two cats, including changing the cat litter. When she went out, she was able to walk and use public transportation. Plaintiff could comfortably lift five to ten pounds. In a June 2012 application document, she said she had trouble due to the left wrist injury, but her main problem with household duties was *mental* limitations that would cause her to "completely break if I start working again." An ALJ may note these inconsistencies and discount the testimony. Toland v. Colvin, 761 F.3d 931, 935-36 (8th Cir. 2014).

Fourth, the ALJ gave Dr. Shah's opinion minimal weight because no evidence in the record supported Dr. Shah's walking and standing limitations; plaintiff was never diagnosed with any impairment that would affect her ability to stand and walk. To the contrary, Dr. Naylor, plaintiff's treating physician, consistently observed plaintiff walked with a fairly normal gait and station and in May 2013 Dr. Shah described her gait as "good." There is no support in the record for plaintiff's lay opinion that her wrist pain would interfere with standing and walking.

In summary, the ALJ gave supported reasons for finding Dr. Shah's opinion should receive minimal weight. The ALJ considered Dr. Shah's few contacts with plaintiff, the gap between the examinations and the opinion, the lack of objective evidence, Dr. Shah's unsupported limitations, and plaintiff's activities. The ALJ's determination is supported by the record.

Plaintiff's second claim of error is that the ALJ failed to have sufficient medical opinion support for the RFC. The objective medical tests, treatment records, additional Appeals Council evidence, and plaintiff's daily activities, were the support the ALJ claimed.

In August 2012, Dr. Naylor noted plaintiff had no neurologic abnormalities. Plaintiff had intact coordination in her arms and legs, symmetrical reflexes, intact sensation, and a normal gait. In her left upper extremity, plaintiff had no obvious tenderness or crepitation. Plaintiff had a full and painless range of motion in her left shoulder, elbow, wrist, and hand. Dr. Naylor observed fairly normal muscle strength and tone and no evidence of muscle atrophy.

In November 2012, Dr. Naylor, the actual treating physician, repeated his August 2012 observations. On this occasion, plaintiff had some left thumb and wrist bruising, but no "snuff box"[1] tenderness. Plaintiff had a positive Finkelstein's test[2] but was otherwise neurologically normal. In January 2013, Dr. Naylor again found plaintiff had a full and painless range of motion in her shoulder, elbow, wrist, and hand with fairly normal muscle strength and no atrophy. He noted she continued to have tenderness over her thumb but was otherwise neurologically normal. Dr. Naylor repeated these observations in March 2013. In April 2013, Dr. Naylor stated plaintiff's MRI "was consistent with minimal findings of tendinopathy" in her thumb and reflex sympathetic dystrophy and he recommended further tests. That same month, Dr. Jakubowski said plaintiff's bone scan showed, "No scintigraphic evidence of complex regional pain syndrome (formally reflex sympathetic dystrophy)." Thus, two years into the relevant time, plaintiff's own treating physician did not document significant limitations. This is sufficient support for the ALJ's RFC determination.

---

[1] The anatomical snuffbox is at the base of the thumb where it connects to the wrist.

[2] The Finkelstein test is a test for de Quervain's disease.

In sum, the record demonstrates that the ALJ properly considered all of the evidence and accounted for all of the limitations the record established. Plaintiff's arguments to the contrary amount to a request that the Court impermissibly reweigh the evidence in plaintiff's favor. See Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992); Hurd, 621 F.3d at 738 (citing Howard, 255 F.3d at 581).

Based on the record, it is the court's view that the Commissioner's decision is supported by substantial evidence.

It is therefore

ORDERED

Affirmed.

June 14, 2016

                                                Edward J. McManus, Judge
                                                UNITED STATES DISTRICT COURT